*In re* KADER.

1. PARDON—PAROLE OF CRIMINAL SEXUAL PSYCHOPATHIC PERSON—
   CONDITIONS—STATUTES.
   Release by parole of person who had been committed as a ·
   criminal sexual psychopathic person must have been upon
   conditions attached thereto, at least by implication, where
   there was no hearing in court to determine whether or not
   he had recovered from such psychopathy, since an uncondi-
   tional parole would amount to a complete discharge and would
   be contrary to statute; the word "parole" itself implying
   a conditional release (CL 1948, § 780.501 *et seq.*).

2. SAME—PAROLE OF CRIMINAL SEXUAL PSYCHOPATHIC PERSON—
   CONDITIONS.
   Conditions of the parole of one who has been committed as a
   criminal sexual psychopathic person should bear some rela-
   tion to the main object of the statute under which he was
   committed, that is, to prevent sexual deviates from preying
   upon society (CL 1948, § 780.501 *et seq.*).

3. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—VIOLATION OF
   PAROLE.
   A person who exhibits abnormal sexual behavior while on
   parole from commitment as a criminal sexual psychopathic
   person breaches an implied condition of his parole (CL 1948,
   § 780.501 *et seq.*).

4. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—PAROLE—AB-
   NORMAL SEXUAL BEHAVIOR.
   What constitutes abnormal sexual behavior of a parolee from
   commitment as a criminal sexual psychopathic person is
   primarily a matter for medical determination (CL 1948,.
   § 780.501 *et seq.*).

5. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—VIOLATION OF
   PAROLE—EVIDENCE.
   Determination of director of department of mental health that
   parolee had violated terms of his parole from commitment
   as a criminal sexual psychopathic person was not an abuse
   of his discretion, where there is evidence that parolee was

convicted of simple larceny so committed as to disclose the characteristics of a planned sex crime rather than simple larceny (CL 1948, § 780.501 *et seq.*, as amended by PA 1950, No 25).

6. SAME—CRIMINAL SEXUAL PSYCHOPATHIC PERSONS—VIOLATION OF PAROLE—FURTHER TREATMENT.

Parolee from commitment as a criminal sexual psychopathic person, committed in the first instance until he should have fully and permanently recovered from his psychopathy, was properly ordered returned for further treatment, where there is evidence that he committed a crime having the characteristics of a planned sex crime (CL 1948, § 780.501 *et seq.*, as amended by PA 1950, No 25).

Habeas corpus by Dale Kader with accompanying certiorari to Lenawee circuit court to obtain his release from State Prison of Southern Michigan. Submitted June 10, 1952. (Calendar No. 45,304.) Writ denied September 3, 1952.

*James B. Stanley,* for petitioner.

*Frank G. Millard,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

BUSHNELL, J. Petitioner Dale Kader, in his application for writ of habeas corpus, claims that he is illegally imprisoned and restrained in the State prison of southern Michigan. We issued our writ to inquire into the matter and, in response to the ancillary writ of certiorari, we have the records pertaining to Kader's detention. He was arrested in December of 1941, on the charge of indecent liberties with a 6-year-old female child. Qualified psychiatrists made a personal examination, filed written reports and testimony was taken in open court. On May 15, 1942, the circuit judge of Lenawee county adjudged Kader to be a "criminal sex(ual) psychopathic person," in accordance with the provisions

of PA 1939, No 165 (see CL 1948, § 780.501 *et seq.* [Stat Ann 1949 Cum Supp § 28.967(1) *et seq.*]).*

Kader was committed to the State hospital commission (now department of mental health) "to be confined in an appropriate institution under the jurisdiction of either the State hospital commission or the department of corrections until the said Dale Kader shall have fully and permanently recovered from such psychopathy."

On May 18th, by order of the commission, Kader was confined in the Ionia State Hospital. About 2 years later, on order of the commission, he was admitted to parole in the custody of his father, on the verbal condition that he would conduct himself as a good citizen. He was returned to the hospital as a parole violator on November 30, 1944, after having been accused of committing indecent acts upon several small children. In February of 1946, Kader was transferred to the State prison because the hospital was unable to help him readjust his abnormal sexual behavior. In December of 1948 he was returned to the hospital, and he was again released on parole on February 11, 1949, for the reason that he had sufficiently improved. In December of that year he was convicted of using obscene language in a public place, he appealed to the circuit court, where his conviction was affirmed. In May of 1950 he was re-examined at the hospital, but his parole was not revoked.

In March of 1951, the prosecuting attorney of Washtenaw county advised the director of the mental health commission that Kader was convicted and given the maximum sentence of 90 days on a charge of simple larceny. The director's attention was called to the evidence, which disclosed that the offense appeared to have the characteristics of a

---

* The above statute was amended by PA 1950, No 25 and PA 1952, No 58.

planned sex crime rather than simple larceny. It was recommended that he be returned to institutional custody as a parole violator. On March 17, 1951, Kader was returned to the Ionia State Hospital on a warrant issued by the director of the department of mental health. In May of 1951 he was transferred to the State prison as a criminal sexual psychopathic visitor.

Kader claims that, because his last release was not preceded by a written agreement setting forth the terms of his parole or any definite understanding relating thereto, such release was outright and unconditional. He further claims that the order of the director of the department of mental health was not within the authority of the director and, therefore, void; and, if the order was based upon his conviction for larceny, it was unreasonable.

Section 6 of the criminal sexual psychopathic act (CL 1948, § 780.501 *et seq.*, as amended [Stat Ann 1949 Cum Supp § 28.967(1) *et seq.*]), provides:

"The State hospital commission shall have the right to release such person upon parole to such persons and under such conditions as his condition, in the judgment of the State hospital commission merits."

At the time of Kader's parole, section 7 of the act read:

"Such criminal sexual psychopathic person shall be discharged only after he shall have fully recovered from such psychopathy."

This section further provided that if it is claimed that a person has recovered, a petition may be filed in the court which committed him, and such court shall proceed to determine whether or not he has recovered from such psychopathy.

Kader's parole must have had some conditions attached to it, at least by implication. An uncon-

ditional parole would amount to complete discharge, which would be contrary to the statute; and, the word "parole" itself implies a conditional release. *In re Eddinger,* 236 Mich 668, 670. *People* v. *Pippin,* 316 Mich 191, cited by petitioner in support of his argument, is inapplicable to the parole of a criminal sexual psychopathic person.

We agree with petitioner's statement, "that conditions of parole under this particular public act should bear some relation to the main object of the act which is to prevent sexual deviates preying upon society." If a person exhibits abnormal sexual behavior while on parole, he has breached an implied condition of his parole. What constitutes such behavior is primarily a matter for medical determination.

If Kader had been merely convicted of simple larceny, this fact of itself might be an insufficient basis for rehospitalization. However, where the circumstances of the theft for which he was convicted, plus his previous conviction for indecency indicate abnormal sexual behavior and a medical decision follows, we cannot say that the director's determination was an abuse of his discretion.

Kader was committed in the first instance until he should have fully and permanently recovered from his psychopathy, and when the director decided that he should be returned for further treatment, he acted within his authority to confine Kader until he had recovered.

The petition for habeas corpus is denied, and the writ is dismissed.

DETHMERS, BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.