128 N.J. Super. 140 (1974)
319 A.2d 257
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH DALONGES, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Remanded to Appellate Division October 16, 1973.
Argued December 19, 1973.
Last Supplemental Brief filed December 20, 1973.
Decided April 17, 1974.
*142 Before Judges LEONARD, ALLCORN and CRAHAY.
Mr. Edward P. Hannigan, Assistant Deputy Public Defender, argued the cause for appellant. (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Edwin H. Stern, Acting Prosecutor, argued the cause for respondent, The State of New Jersey.
Mr. Joseph P. Maloney, Deputy Attorney General, argued the cause for respondent, Department of Law and Public Safety.
CRAHAY, J.A.D.
Defendant originally appealed from a denial of post-conviction relief which essentially challenged his continued incarceration in New Jersey State Prison as a parole violator.
The appeal projected basically two issues: (1) that he was entitled to have further proceedings before the trial court to test the accuracy of a Menlo Park Diagnostic Center report employed at the time of his sentencing as a sex offender in 1958, and (2) that he could not continue to be held under his original commitment since at the time he was found to be in violation of parole he was not suffering from any sexual aberration or disorder and did not require further custodial treatment and supervision as a sex offender.
As to the first issue, we held in an unreported opinion that the trial judge's findings on the hearing for post-conviction relief were supported by the record. We noted further that the record reflected that experienced and competent defense counsel not only did not challenge the Diagnostic Center report at the time of sentencing but rather affirmatively concurred in its findings. Accordingly, we concluded on the record here that State v. Horne, 56 N.J. 372 (1970), did not mandate an attack on the diagnostic report 13 years after its submission.
*143 We then proceeded to dismiss the appeal on the remaining issue as being moot, having ascertained that on June 19, 1973  the date of the original argument  defendant had been admitted to bail and was to be reparoled on June 26, 1973.
Defendant's subsequent petition for certification was granted by the Supreme Court, the dismissal of the appeal set aside and the cause remanded to the Appellate Division for a meritorious disposition. The issue presently addressed to us is a consideration of the manner of treatment of alleged parole violations by persons sentenced under the Sex Offender Act (N.J.S.A. 2A:164-3 et seq.), and specifically, as here where there is no finding that the offender continues to suffer from any mental disorder grounded in sexual aberration warranting continued custodial supervision and treatment.
The legal issue presented on this record is a narrow one and it, and some tangential considerations, have been thoroughly and ably briefed by the parties several times in the course of this appeal. We chronicle the essential and undisputed facts.
On May 20, 1957, in a two-count indictment, defendant, then 28 years of age, was charged in the first count with the carnal abuse of a 15-year-old girl contrary to N.J.S.A. 2A:138-1, and in the second count with assault with intent to commit carnal abuse. On November 25, 1957 defendant pleaded non vult to the first count of the indictment.
By virtue of N.J.S.A. 2A:164-3, 5 and 6, defendant was committed to the Diagnostic Center and, following an examination in January 1958, was found to be within the purview of the act[1] and he was sentenced as a sex offender to an indeterminate term at the New Jersey State Hospital.
*144 In June 1962 defendant was paroled. Attached to his certificate of parole  and executed by defendant  were the standard terms and conditions then generally employed by the State Parole Board. No special conditions were included, notwithstanding the nature of defendant's offense or the reasons for his incarceration.
In January 1967 the Parole Board declared defendant to be "delinquent on parole," having violated conditions 4(a) and 4(g)(5) of the stated conditions of his parole. Those conditions required him to "obey all laws and public ordinances" (4(a)) and to "obtain permission from his parole supervisor before leaving the State of your approved residence" (4(g)(5)). The gravamina of the breaches were that (1) defendant had been convicted of attempted petit larceny in the State of New York on January 16, 1967, and (2) that he had failed to gain his parole supervisor's permission before leaving New Jersey. Defendant's parole was formally revoked on August 24, 1967, the reasons assigned being identical to those recited in the "declaration of delinquency."
During the next 3 1/2 years, defendant remained in New York and resisted extradition to New Jersey. During that time he was convicted of four other petit larceny offenses. (For each offense he served short custodial terms in the State of New York.) In October 1970 defendant elected to waive his right to contest extradition and was returned to the State Prison at Rahway.
A report of the Special Classification Review Board, dated December 16, 1970, noted that defendant had pleaded guilty to violating parole and included a finding by the Diagnostic Center that "we do not feel that the inmate has any type of sexual problem at the present time." (emphasis added) The Board recommended that defendant be transferred to the Trenton State Hospital. At his request he was transferred to the general prison population in New Jersey State Prison in December 1971.
Defendant, pro se, petitioned for post-conviction relief on February 25, 1971. The first two grounds thereof were essentially *145 that he was denied due process and equal protection of the law in not having the opportunity to refute allegedly inaccurate information in the Diagnostic Center's report. This was the Horne issue which was decided adversely to defendant and affirmed by us in our original opinion. (In the most recent brief filed with us, defendant assumes  as do we  that the Horne question is no longer in issue.)
The third point of defendant's petition for post-conviction relief was that "petitioner's present commitment in New Jersey State Prison is illegal, unconstitutional and void." The petition did not specify the bases for the purported illegality of the recommitment but the transcript of the hearing on the petition alluded to defendant's complaint that he had been "pick[ed] up on a charge unrelated to a sex offense * * *." The trial court questioned its jurisdiction to review this grievance on post-conviction relief and properly noted that the action of the Parole Board was reviewable on direct appeal to the Appellate Division. Beckworth v. N.J. State Parole Bd., 62 N.J. 348 (1973).
In any event, we now treat of the defendant's crystallized proposition that 
* * * the State Parole Board may not revoke the parole of a special sex offender by reason of his commission of a non-sexual offense at all.
We find this thesis overly broad and not within the contemplation of the governing legislation or decisional authorities.[2] We are, however, satisfied that when dealing with purported parole violations, the Legislature did not intend that *146 a sex offender be automatically returned to a custodial situation. A review of the act allows a reasonable inference that it must appear that the offenses or breaches of parole conditions were of a character warranting a finding that because of some continuing sexual aberrations or disorders the offender was incapable of making an acceptable social adjustment in society. Or conversely, that at the time of the alleged violation, his mental condition was such that his treatment as a sex offender mandated continued custodial supervision.
We need not here detail the legislative and decisional history of the New Jersey Sex Offender Act which was succinctly recounted by Justice Jacobs in State v. Lee, 60 N.J. 53 (1972). It is enough to say that the legislative plan is to afford persons determined to be sexual offenders specialized treatment for their mental and physical aberrations. In furtherance of that scheme courts are required to place such persons on probation with special conditions for treatment, or commit them to custodial situations for treatment. When released from custody they are subject to parole supervision. If institutional commitment is ordered, it may not be for a period of time greater than that provided by law for the crime "for which the person was convicted". N.J.S.A. 2A:164-5 and 6. All decisional authority is to the end that specialized treatment of the offender is the polestar. State v. Lee, supra.; State v. Wingler, 25 N.J. 161 (1957); State v. Morales, 120 N.J. Super. 197 (App. Div. 1972), certif. den. 62 N.J. 77 (1972); State v. Mickschutz, 101 N.J. Super. 315 (App. Div. 1968).
In Mickschutz Judge Gaulkin reminded us that
The philosophy of the Sex Offender Act is that those who come within it require treatment, not punishment ... The purpose of the Act is cure of a defendant. That is the prime justification for the provision of the act that, regardless of the circumstances of the offense or the willingness of the victim, a defendant is subject to confinement until he is "capable of making an acceptable social adjustment in the community," * * *. [at 320]
*147 As noted, we cannot subscribe to defendant's argument that the State Parole Board, having determined that there was a violation of parole, may not revoke parole of a special sex offender by reason of his commission of a "non-sexual offense." Committing a criminal offense or other breaches of parole conditions  which ostensibly are non-sexual in character  may nonetheless be a basis for a determination that treatment of the offender's underlying condition or other sexually related aberration requires further institutional maintenance or an alteration in the conditions of parole. State v. Lucas, 30 N.J. 37 (1959); State v. Morales, supra. Such determinations reside in the expertise of the authorities making them and will be disturbed judicially only on a clear showing of error. Ex Parte Kader, 334 Mich. 339, 54 N.W.2d 607 (Sup. Ct. 1952). Compare State v. Carter, 64 N.J. 382 (decided March 6, 1974).
In Ex Parte Kader, supra., defendant had been committed as a criminal sexual psychopath and was thereafter paroled. While on parole he was convicted of simple larceny. It was held that the Director of Mental Health was within his statutory authority in revoking parole and reconfining defendant for further treatment. The Court stated:
If a person exhibits abnormal sexual behavior while on parole, he has breached an implied condition of his parole. What constitutes such behavior is primarily a matter for medical determination.
If Kader had been merely convicted of simple larceny, this fact of itself might be an insufficient basis for rehospitalization. However, where the circumstances of the theft for which he was convicted, plus his previous conviction for indecency indicate abnormal sexual behavior and a medical decision follows, we cannot say that the director's determination was an abuse of his discretion. [54 N.W.2d at 609]
In the instant matter, unlike Ex parte Kader, the determination made by the Diagnostic Center in no way reflects that the defendant's parole violations evinced conditions which coupled with his original conviction, warranted further treatment in a custodial situation. As noted earlier, *148 the totality of the finding by the Diagnostic Center on December 16, 1970 was that it did not feel that the inmate had any type of sexual problem at that time. Accordingly, in our view, the record was empty of any statutory warrant for maintaining him in custody for treatment since no treatment was meaningfully bespoken. We are satisfied that justice required, and the Legislature intended, that defendant be paroled following the finding here, and that it was the obligation of the Special Classification Review Board to so recommend. State v. Mickschutz, supra. at 320. We do not by this holding mean to delimit any of the statutory authority in the Parole Board to amend, amplify or enlarge upon the conditions and terms of parole aimed at governing supervision of defendant on continued parole.[3]N.J.S.A. 2A:164-8.
In summary, then, we hold that the parole of a sex offender cannot properly be revoked unless the reason for revocation is based at least in part upon the finding by the Parole Board and based upon a determination by the Diagnostic Center founded on adequate medical reasons, that defendant's violation of parole reflects emotional or behavioral problems as a sex offender and evidences that he is incapable of making any acceptable social adjustment in the community because of such problems and in fact requires further specialized treatment as mandated by N.J.S.A. *149 2A:164-5. While not involved here, we note that prior to such a determination defendant is, of course, entitled to the due process requirements, as enunciated in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). See also, Puchalski v. N.J. State Parole Board, 55 N.J. 113 (1969), cert. den. 398 U.S. 938, 90 S.Ct. 1841, 26 L.Ed.2d 270 (1970).
On this record, then, we find that the Parole Board, having cited defendant as a parole violator, erred in not reparoling him following the Diagnostic Center's findings, which lacked a clear recommendation for continued specialized treatment, in custody, as a sex offender. The matter is remanded to the State Parole Board with directions to amend its records accordingly.
Remanded.
NOTES
[1] The pertinent finding therein was that  "there was a compulsive element in his present offense, and therefore it would seem advisable to commit him to a mental hospital under the provisions of the New Jersey Sex Law."
[2] It was suggested in earlier briefs that where there is a parole violation, grounded in an offense not involving any sexual aberration or recommendation for continued custodial supervision and treatment, that defendant be remanded to the trial court for the imposition of a minimum and maximum sentence. All parties now agree  and correctly  that such a device has no legal warrant once a defendant has been adjudicated a special sexual offender under the act. Compare State v. Wingler, infra.
[3] The Attorney General, in his last brief addressed to us, advises that the position of the State Parole Board as of November 19, 1973 was that it should exercise its parole revocation authority in a manner so as to limit it to cases where the offense or other noncriminal behavior while on parole demonstrates a return to the emotional and behavioral problems which originally resulted in the parole's conviction as a sex offender. Whether such conduct does, in fact, relate to his original sexual commitment, is to be determined by the Menlo Park Diagnostic Center by examination and Parole Board revocation hearing procedures. This procedure was not in effect at the time of defendant's return as a parole violator in 1970 but is rather a "new policy" which has been developed as a result of the Board's "study of the problem."