**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3920-17T4

JOSEPH J. NORMAN,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 14, 2019**
>
> **APPELLATE DIVISION**

Submitted December 19, 2018 – Decided January 14, 2019

Before Judges Alvarez, Nugent and Mawla.

On appeal from the New Jersey State Parole Board.

Borger Matez, PA, attorneys for appellant (Jonathan E. Ingram, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MAWLA, J.A.D.

Appellant Joseph J. Norman appeals from March 28 and April 24, 2018, decisions by the New Jersey State Parole Board (Board). The primary question raised on appeal is whether an appellant who has served his sentence pursuant to the Sex Offender Act (SOA), N.J.S.A. 2C:47-1 to -10, can be compelled to undergo a psychological evaluation for violation of certain conditions of parole supervision for life (PSL), and mandatory parole supervision (MPS), imposed outside the SOA. We hold the Board cannot compel such an evaluation and reverse that part of its decision. We affirm the Board's imposition of a parole eligibility term (PET) for Norman's violation of a special condition of MPS.

We take the following facts from the record. Norman was twenty-one years old when he committed several acts of aggravated sexual assault against a fourteen-year-old family member. He was arrested in September 2008, and in December 2008, pled guilty to one count of first-degree aggravated sexual assault, in violation of N.J.S.A. 2C:14-2(a)(2)(A).

Norman was sentenced in the second-degree range to seven years of incarceration in the Adult Diagnostic and Treatment Center (ADTC), subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2(d)(7). NERA requires MPS for all first- and second-degree offenses. N.J.S.A. 2C:43-7.2(c).

Norman was further sentenced to PSL following service of the custodial portion of his sentence, as required by N.J.S.A. 2C:43-6.4(a).

On September 9, 2014, Norman was granted parole and discharged from the ADTC "by reason of the expiration of his maximum custodial sentence." Norman had served his entire seven-year sentence through a combination of jail credits and time served following his conviction. His final discharge stated he was "being discharged from the custodial portion of his . . . sentence only to commence the period of supervision as set forth by . . . [NERA]." Specifically, Norman was paroled for five years pursuant to MPS, and also began PSL pursuant to N.J.S.A. 2C:43-6.4(a). Notably, he was not paroled pursuant to N.J.S.A. 2C:47-5(a), which governs sex offenders who are paroled before the expiration of their maximum sentence under SOA.

In pertinent part, the conditions of MPS required Norman to: "Immediately notify the assigned parole officer of any change in employment status. . . . Refrain from initiating, establishing or maintaining contact with any minor[,] . . . [and] [s]uccessfully complete the EMP[.][1]" Separately, PSL also included the same conditions. Notably, the Board stated Norman's "PSL status was previously continued to the [EMP] in 2016[,] and most recently continued to the [EMP] in February of 2017[]" because of a prior violation.

---

[1] Electronic Monitoring Program.

In May 2017, Norman was arrested for violating parole by failing to inform his parole officer that he had been terminated from his job and for having unsupervised visits with his minor children. On October 18, 2017, a Board panel found Norman had violated the PSL and MPS conditions of his parole. The panel revoked Norman's PSL and directed him to serve twelve months of incarceration. It also revoked MPS and referred him to the ADTC for a psychological evaluation, pursuant to N.J.A.C. 10A:71-3.54(i)(3) and 10A:71-7.19A.

On March 28, 2018, the Board affirmed the panel's determination. According to the Board, the purpose of the psychological evaluation was to "determine whether to affirm the revocation of the mandatory term of supervision and, if affirmed, whether . . . Norman's eligibility for future mandatory supervision consideration will be based on N.J.S.A. 2C:47-5(a) or the relevant provisions of N.J.S.A. 30:4-123.45 [to -123.88]."

Norman did not challenge the twelve months of incarceration for violating PSL. Rather, he requested the Board revise its determination to permit his release, effective May 16, 2018, having served the twelve months in confinement, and to resume parole. He argued neither the regulation governing MPS, nor the one governing PSL, granted the Board authority to

require a psychological evaluation as a condition of resuming parole, and his continued confinement as a result was unconstitutional.

On April 24, 2018, the Board denied Norman's request. This appeal followed.

I.

The issue on appeal – the Board's interpretation of statutes governing Norman's sentence and regulations regarding his parole – presents a question of law. We owe considerable deference to an agency's interpretation of its own regulations. US Bank, NA v. Hough, 210 N.J. 187, 200 (2012) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). However, "an agency's interpretations, whether through regulations or administrative actions, 'cannot alter the terms of a legislative enactment nor can they frustrate the policy embodied in [a] statute.'" Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 183 (App. Div. 2011) (alteration in original) (quoting N.J. Ass'n of Realtors v. N.J. Dep't of Envtl. Prot., 367 N.J. Super. 154, 159-60 (App. Div. 2004)). "Ultimately, reviewing courts are not 'bound by the agency's interpretation of a statute.'" Ibid. (quoting Shim v. Rutgers, 191 N.J. 374, 384 (2007)).

On appeal, Norman asserts he was not paroled pursuant to the SOA, and consequently is not subject to the provisions of N.J.A.C. 10A:71-3.54(i)(3) and

A-3920-17T4

N.J.A.C. 10A:71-7.19A.  He argues subjecting him to a psychiatric evaluation when he had already served his original sentence placed him in double jeopardy and constituted ex post facto punishment.  He also argues he should have been released no later than May 17, 2018, pursuant to N.J.A.C. 10A:71-3.54(i)(2) and 10A:71-7.17B(a)(2).  He asserts a twelve-month PET should not have been imposed because he did not violate a special condition certified to by the Board.

II.

As we noted, the Board revoked Norman's MPS and referred him to the ADTC for a psychological evaluation, pursuant to N.J.A.C. 10A:71-3.54(i)(3) and 10A:71-7.19A.  The Board's interpretation of the regulation was mistaken.

"An administrative agency, in construing its regulations, must apply the same rules of construction as those guiding statutory construction by the courts."  Krupp v. Bd. of Educ. of Union Cty. Reg'l High Sch. Dist. No. 1, 278 N.J. Super. 31, 38 (App. Div. 1994) (citing In re N.J.A.C. 14A:20-1.1, 216 N.J. Super. 297, 306-07 (App. Div. 1987)).  For that reason, a regulation "should be construed according to the plain meaning of the language."  In re 1999-2000 Abbott v. Burke Implementing Regulations, 348 N.J. Super. 382, 399 (App. Div. 2002) (citing Medford Convalescent & Nurs. Ctr. v. Div. of Med. Assist. & Health Servs., 218 N.J. Super. 1, 5 (App. Div. 1985)); accord

Czar, Inc. v. Heath, 398 N.J. Super. 133, 138 (App. Div. 2008), aff'd as modified, 198 N.J. 195 (2009).

"If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." Calco Hotel Mgmt. Grp., Inc. v. Gike, 420 N.J. Super. 495, 503 (App. Div. 2011) (alteration in original) (quoting TAC Assocs. v. N.J. Dept. of Envtl. Prot., 202 N.J. 533, 541 (2010)). Furthermore, "courts should avoid a construction that would render 'any word in the statute to be inoperative, superfluous or meaningless, or to mean something other than its ordinary meaning.'" Ibid. (quoting Bergen Commercial Bank v. Sisler, 157 N.J. 188, 204 (1999)).

Criminal statutes are subject to sharper scrutiny for vagueness than civil statutes because criminal statutes have greater penalties and more severe consequences. State v. Maldonado, 137 N.J. 536, 562 (1994) (citing State v. Afanador, 134 N.J. 162, 170 (1993)); State v. Bond, 365 N.J. Super. 430, 438 (App. Div. 2003). This comports with the doctrine that "penal statutes must be strictly construed against the State." State v. Soltys, 270 N.J. Super. 182, 188 (App. Div. 1994) (quoting State v. Churchdale Leasing, Inc., 115 N.J. 83, 102 (1989)).

Strict construction is appropriate as long as it is not contrary to the Legislature's plain intent, State v. Anicama, 455 N.J. Super. 365, 386 (App.

Div. 2018) (quoting State v. Carreker, 172 N.J. 100, 115 (2002)), and as long as it would not "unduly hinder" the Legislature's "object and purpose." State v. Marchiani, 336 N.J. Super. 541, 545 (App. Div. 2001) (citing State v. Rucker, 46 N.J. Super. 162, 167-68 (App. Div. 1957)).

N.J.A.C. 10A:71-7.19A(a) states "[t]his section applies to offenders who were sentenced to confinement in the [ADTC] under N.J.S.A. 2C:47-1 [to -10] for an offense committed on or after December 1, 1998; who were paroled under the provisions of N.J.S.A. 2C:47-5(a); and who violate parole." Such individuals are subject to a psychological examination. N.J.A.C. 10A:71-7.19A(b). The purpose of the examination is to:

> determin[e] whether the violation(s) of the parole conditions reflects emotional or behavioral problems as a sex offender that cause the offender to be incapable of making any acceptable social adjustment in the community and, if so, to determine further the inmate's amenability to sex offender treatment and, if amenable, the inmate's willingness to participate in such treatment.
>
> [N.J.A.C. 10A:71-7.19A(d).]
>
> [I]f the report of the examination conducted pursuant to . . . [N.J.A.C. 10A:71-7.19A(d)] above reveals that the inmate's violation(s) of the parole conditions reflects emotional or behavioral problems as a sex offender that cause the inmate to be incapable of making any acceptable social adjustment in the community and further reveals that the inmate is amenable to sex offender treatment and is willing to participate in such treatment. The inmate shall be

eligible for parole pursuant to the provisions of N.J.S.A. 2C:47-5(a).

[N.J.A.C. 10A:71-7.19A(i).]

By its plain language, N.J.A.C. 10A:71-7.19A(a) contemplates an inmate who was paroled, pursuant to N.J.S.A. 2C:47-5(a) before completing his sentence and committed a parole violation. Indeed, the entire rubric of the aforementioned regulations contemplates the inmate's return to the State's custody and an evaluation to determine whether he can safely serve the remainder of his sentence in the community. These regulations are inapplicable to an inmate who has served the entirety of his sentence under the SOA.

Our conclusion is further supported by the fact N.J.A.C. 10A:71-7.19A was enacted to codify our holding in State v. Dalonges, 128 N.J. Super. 140 (App. Div. 1974). In 1957, Dalonges pled non vult to sexually assaulting a fifteen year old. Id. at 143. He was incarcerated in 1958 and paroled with conditions in 1962, before completing his sentence. Id. at 143-44. In 1967, he violated the conditions of his parole by leaving New Jersey without permission and attempting petit larceny in New York. Id. at 144. Once he was returned to custody, a psychological evaluation was performed and revealed no issues or concern he would reoffend as a sexual predator. Ibid. Thus, Dalonges

challenged the revocation of parole where he had committed a non-sexual offense. Id. at 145.

On appeal, we held the intent of the SOA was to treat sexual offenders. Id. at 145-46. We concluded Dalonges' parole violations did not relate to his original offenses and did not justify keeping him in custody for further treatment. Id. at 147-48. Most importantly, Dalonges' violations occurred while he was paroled and before he served his sentence. Id. at 143-44.

In contrast, Norman had already served his sentence. Thus, the facts and outcome of Dalonges underscore that N.J.A.C. 10A:71-7.19A does not apply to Norman. Moreover, we note MPS and PSL did not exist at the time of our holding in Dalonges.[2] Therefore, we reject the Board's assertion these parole supervision and monitoring regimes fall within the SOA, and thus constitute a continuation of Norman's SOA sentence.

Furthermore, we reject the Board's argument that it can compel a psychological evaluation in order to determine Norman's future parole eligibility under MPS based upon N.J.S.A. 2C:47-5(a). The statute states: "Any offender committed to confinement under the terms of this chapter shall

---

[2] "The 2003 Amendment to N.J.S.A. 2C:43-6.4 'replaced all references to "community supervision for life" with "parole supervision for life."'" State v. Hester, 233 N.J. 381, 394-95 (2018) (quoting State v. Perez, 220 N.J. 423, 429 (2015)). N.J.A.C. 10A:71-3.54 codified mandatory supervision cases effective August 3, 1998. 30 N.J.R. 2920(a).

become eligible for parole consideration upon referral to the State Parole Board of the offender's case by a special classification review board appointed by the commissioner." N.J.S.A. 2C:47-5(a). Thus, by its plain language, N.J.S.A. 2C:47-5 does not apply to Norman because he served his SOA sentence, and is no longer subject to its provisions, and because the PSL and MPS requirements operate under a different statutory framework.

Therefore, the Board's argument that N.J.A.C. 10A:71-3.54(i)(3) applies when an MPS term is revoked, and authorizes the Board to order the psychological evaluation, misreads the regulation and N.J.S.A. 2C:47-5. In pertinent part, the regulation states:

> (i) If a term of parole supervision imposed by a court pursuant to N.J.S.A. 2C:43-7.2 is revoked by the appropriate Board panel and the offender returned to custody for violation of a condition of supervision the Board panel shall determine:
>
> . . . .
>
> 3. Whether the offender, if originally sentenced pursuant to N.J.S.A. 2C:47-1 [to -10] and eligibility for parole consideration required the recommendation of the Special Classification Review Board, shall be eligible for parole consideration pursuant to the provisions of N.J.A.C. 10A:71-7.19 or 7.19A, as appropriate.
>
> [N.J.A.C. 10A:71-3.54(i)(3).]

11

The plain language of the regulation demonstrates it does not apply to Norman. In Norman's final discharge document dated September 9, 2014, the Board acknowledged he had been released from ADTC because of the "expiration of his maximum custodial sentence." Furthermore, the Board stated: "This offender is being discharged from the custodial portion of his . . . sentence only to commence the period of supervision as set forth by . . . [NERA]." Thus, the Board acknowledged MPS was not a continuation of the SOA sentence, which had already been completed. Moreover, for reasons we have already discussed, N.J.A.C. 10A:71-3.54(i)(3)'s reference to N.J.A.C. 10A:71-7.19A does not apply to Norman.

For these reasons, we reverse the Board's finding Norman was required to undergo a psychological evaluation.[3] We hold that where an individual has already served his sentence, he cannot be required to undergo a psychological evaluation pursuant to N.J.A.C. 10A:71-3.54(i)(3) and 10A:71-7.19A. Absent further comment by the Legislature, these regulations only apply to individuals who have been released on parole before completing their sentence.

---

[3] We decline to address Norman's constitutional arguments because the plain language of the regulations resolve the issue. "Constitutional questions should not be addressed unless they are imperative for the disposition of the litigation." Grant v. Wright, 222 N.J. Super. 191, 197-98 (App. Div. 1988) (citing State v. Salerno, 27 N.J. 289, 296 (1958)).

## III.

Finally, Norman argues that under N.J.A.C. 10A:71-3.54(i)(2) he should have received a term of nine months PET, pursuant to N.J.A.C. 10:71-7.17B(a)(2), and no more than twelve months under N.J.A.C. 10A:71-7.17B(a)(3)(viii). Norman asserts the Board failed to state its reasons for imposing a twelve-month PET. He argues the PET could not have been established for a violation of a special condition, under N.J.A.C. 10A:71-6.4(e) or (f), because the former provision only applies when the Board certifies to a special condition, and the latter concerns a violation where an individual fails to notify an employer of his parole status and criminal record. Norman argues neither provision applies here.

We find no error in the Board's imposition of a twelve-month PET. The Board has broad discretion in parole release decisions. Trantino v. N.J. State Parole Bd., 296 N.J. Super. 437, 470 (App. Div. 1997) (citing State v. Lavelle, 54 N.J. 315 (1969)). N.J.A.C. 10A:71-7.17B(a)(3)(viii) requires the imposition of a twelve-month PET for a violation of a special condition of parole imposed under N.J.A.C. 10A:71-6.4(e). The Board's March 28, 2018 decision stated as follows: "The Board finds that . . . Norman was placed on the [EMP] on February 15, 2017[,] as a result of a Board panel Notice of Decision dated January 18, 2017[,] that imposed the special condition that . . .

13

Norman successfully complete the [EMP]." Thus, contrary to Norman's claims, the Board panel had imposed special conditions when it adjudicated a prior parole violation in 2017 and decided to continue him on parole.

Separate from the SOA, Norman was subject to MPS as a part of his original sentence, which he violated. Therefore, the imposition of a twelve-month PET, pursuant to N.J.A.C. 10A:71-7.17B(a)(3)(viii), for violation of the special condition was valid.

Reversed in part and affirmed in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3920-17T4