# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0228-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
M.L.V., SVP-318-03.

_____

Submitted September 24, 2025 – Decided February 11, 2026

Before Judges Currier and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. SVP-318-03.

Jennifer N. Sellitti, Public Defender, attorney for appellant M.L.V. (Stefan Van Jura, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

PER CURIAM

M.L.V.,[1] a formerly committed resident under the Sexually Violent Predators Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, appeals from an order vacating his conditional release and recommitting him to the Special Treatment Unit (STU), a secure custodial facility designated for the treatment of persons in need of commitment pursuant to the SVPA. For the reasons set forth below, we affirm.

## I.

## A.

We recount M.L.V.'s history, prior to his initial commitment, from the direct appeal of his 2003 temporary and final orders of commitment.

> M.L.V.'s record dates to April 1971, when he was fifteen years old. In January 1973, M.L.V. was sentenced to a juvenile detention facility after he caused substantial damage to six new cars. He was paroled in August 1973 and in October 1973, while on parole, M.L.V. and a friend abducted a 19-year old woman in a parking lot, forced her into her car at knife point and drove several miles to a wooded area, where they forced the woman to remove her clothing and raped her. After the assault, M.L.V. and his accomplice drove south with their victim. Two days later, the victim was able to seek assistance. M.L.V. and his accomplice were arrested in Virginia. M.L.V. was returned to the juvenile detention facility. He was released in February 1975.

---

[1] Records relating to civil commitment proceedings are confidential, thus we refer to M.L.V. by initials to comply with our Court Rules. R. 1:38-3(f)(2).

A-0228-24

On August 14, 1976, M.L.V. broke into the apartment of J.M., a 64-year-old deaf mute woman. He was wearing a stocking over his head to conceal his identity. J.M. was asleep on the couch. M.L.V. awakened J.M. and forced her to go to the bedroom, where he tied her wrists and ankles to the bedposts. M.L.V. cut off J.M.'s clothes with a knife and raped her. When M.L.V. heard noises from a nearby apartment, he removed J.M.'s restraints, stole $75 from her purse and fled.

A few weeks later, on September 3, 1976, M.L.V. entered S.O.'s apartment. M.L.V. was wearing a stocking on his head but S.O. recognized him and called him by name. M.L.V. pointed a knife at S.O. and told her not to scream. M.L.V. allowed S.O. to go to the kitchen to feed her young child, but he kept one hand on her and, according to S.O., repeatedly ran the knife across her face. When S.O. screamed and tried to pull away, M.L.V. punched her in the face and fled.

M.L.V. was arrested and charges were filed respecting the incidents involving J.M. and S.O. M.L.V. pled guilty of the rape while armed of J.M. He also pled guilty to breaking and entering S.O.'s apartment with intent to steal while armed. M.L.V. was sentenced to an indeterminate sentence of up to thirty years at the Adult Diagnostic and Treatment Center (ADTC) for the rape; a term of nine to ten years for the armed portion of the rape charge; a three to five-year term for breaking and entering with intent to steal; and two to three years for the armed portion of the breaking and entering charge.

M.L.V. escaped from the ADTC in August 1979 but he was captured and returned to that facility the following month. While out of confinement, M.L.V. and an accomplice committed a robbery. M.L.V. was

3

convicted and sentenced to a twelve-year term for robbery, which was made concurrent to the previously imposed sentences. In March 1993, M.L.V. was released on parole after having been incarcerated for sixteen years.

In 1995, M.L.V. picked up a female hitchhiker. M.L.V. said that the woman agreed to perform oral sex and engage in sexual intercourse for money. M.L.V. paid the agreed upon price[,] but the hitchhiker refused to engage in sexual intercourse and refused to return the money, which she claimed to have dropped outside the building where M.L.V. had taken her. M.L.V. said that he tied the woman's wrists and he went outside to look for the money. The woman escaped and called the police. The charges arising from this incident were downgraded to simple assault. M.L.V. pled guilty and he was sentenced to time served. . . .

On February 2, 1997, M.L.V. was arrested for burglary. While this charge was pending, M.L.V. was arrested for soliciting a prostitute who was in fact an undercover police officer. He pled guilty to a disorderly persons offense and was fined. . . .

[In re Civ. Commitment of M.L.V., 388 N.J. Super. 454, 457-59 (App. Div. 2006).]

We affirmed both M.L.V.'s temporary and final orders of commitment, finding sufficient credible evidence in the record to support the trial court's order involuntarily committing M.L.V. Id. at 466-67. M.L.V. was committed to the STU until his conditional release in 2015. The record shows that M.L.V.'s release required him to "cooperate and abide by [p]arole [s]upervision, as if he

4

were on [p]arole [s]upervision for [l]ife[] and cooperate with the applicable provisions of the Standard Condition[s]" of parole.

In June 2016, while on conditional release, M.L.V. was charged with: first-degree attempted murder, N.J.S.A. 2C:5-1(a)(1) and 2C:11-3(a)(1); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(2); and third-degree endangering an injured victim, N.J.S.A 2C:12-1.2(a). M.L.V. entered into a plea agreement, pleading guilty to second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). M.L.V. was sentenced to eight years' imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

M.L.V. recounted the incident during an evaluation at South Woods State Prison as:

> In New Brunswick the girl propositioned me. I made the mistake of agreeing. I knew a park down the street in Edison. While she was giving me fellatio, she tried to take my wallet out of my pants. At that point everything stopped. . . . I got mad, I always keep a pipe next to my seat. Bad decision I picked the pipe up and hit her with it numerous times.

In contrast, the Pre-Sentence Investigation Report stated that:

> [The victim] was offered a ride by – eventually became known as [M.L.V.], and . . . they negotiated it seems like some fee for some sexual act . . . . She reported that he drove to a wooded area, that she complied with giving him fellatio, and then he told her to undress and forced her to engage in unprotected vaginal intercourse.

5

She reported then that [M.L.V.] then took a metal bar and struck her repeatedly on the head and her body.

B.

On October 5, 2023, upon M.L.V.'s release, the State petitioned for civil commitment of M.L.V. under the SVPA. During the commitment hearing on May 13, 2024, the State called two witnesses, Dr. Roger Harris, a psychiatrist, and Dr. Jamie Canataro, a psychologist, to testify regarding M.L.V.'s proposed involuntary commitment to the STU. M.L.V. did not testify or call an expert. He stipulated to the qualifications of the State's witnesses.

Dr. Harris diagnosed M.L.V. with other specified paraphilic disorder (coercion), and antisocial personality disorder. Dr. Harris testified that he considered M.L.V.'s history to support his opinion that M.L.V. would likely reoffend. Dr. Harris opined that M.L.V. is at a high risk of reoffending in the foreseeable future if he was placed in a less restrictive setting than the STU. Dr. Harris cited M.L.V.'s multiple sexual offenses, various treatment placements, and repeated bad conduct, paired with his non-compliant behavior on parole in 1994, 1995, and 1997 to support his opinion that M.L.V. has problems regulating his behaviors.

Dr. Harris opined that M.L.V.'s 2016 offense constituted a sexually based offense. To support his opinion, Dr. Harris pointed to similarities between the

A-0228-24

2016 offense and M.L.V.'s prior offenses. Dr. Harris further opined that the 2016 offense, which he concluded involved coercion and violence against a woman who agreed to M.L.V.'s sexual demands, followed M.L.V.'s pattern of sexual offending. Dr. Harris noticed M.L.V.'s long history of sexual offenses, including a 1995 offense involving M.L.V. tying up a prostitute and threatening her with a knife and a 1997 offense violating his parole, where he patronized a prostitute that turned out to be an undercover officer. Based upon the information provided, Dr. Harris gave M.L.V. a Static-99R[2] score of five. Dr. Harris stated this score "places [M.L.V.] in a category of men who were at above average risk to sexually reoffend when released from a prison."

Dr. Canataro was then called to testify for the State. Dr. Canataro was a member of the Treatment Progress Review Committee at the STU. Dr. Canataro diagnosed M.L.V. with "other" specified paraphilic disorder (non-consent with elements of sexual sadism and telephone scatalogia), antisocial personality disorder, alcohol use disorder, and borderline intellectual functioning. Dr. Canataro opined that M.L.V. was "at high risk to engage in future acts of deviant

---

[2] The Static-99R is an actuarial predictor used to determine sexually violent recidivism in adult males previously convicted of sexually violent offenses. See M.L.V., 388 N.J. Super. at 460 n.1; Andrew Harris, et al., Static-99 Coding Rules Revised-2003 5 (2003).

sexual behavior" if released into community and recommended his recommitment to the STU.

Dr. Canataro relied in substantial part on M.L.V.'s pattern of behaviors stretching back fifty years. Dr. Canataro opined M.L.V.'s offenses in 1973, 1995, and the most current offense in 2016 all shared similar traits. According to Dr. Canataro, all three of the offenses involved M.L.V. identifying vulnerable females, abducting them, isolating them to put them under his control, bringing his own weapon which suggests forethought of the action, sexually assaulting them, and ultimately leaving them naked. Even though Dr. Canataro stated the 2016 offense was not sexual in nature, he still opined it to be a sexual offense due to "common practice at the STU." Dr. Canataro testified that at the STU it was common to find offenses sexual in nature when a committee's "behaviors fit into their overall offending dynamics . . . considering[ing] that part of their sexual offending history."

The court found the two experts credible. It further found M.L.V. met the criteria for civil commitment under the SVPA. The court noted that while M.L.V. wasn't convicted of a statutory enumerated crime, it was still a crime of significant violence committed under circumstances of significant sexual conduct, which was substantially equivalent conduct of an offense listed under

A-0228-24

N.J.S.A. 30:4-27.26(a). Ultimately, the judge granted the State's petition for M.L.V. to be recommitted to the STU and rescinded M.L.V.'s conditional discharge from 2015. On appeal, M.L.V. argues:

> I. THE ORDER CIVILLY COMMITTING APPELLANT TO THE SPECIAL TREATMENT UNIT FOLLOWING A CONDITIONAL DISCHARGE SHOULD BE REVERSED BECAUSE THE COURT FAILED TO CONSIDER WHETHER LESS SEVERE MEASURES – SUCH AS ADDITIONAL TERMS BY WHICH HE MUST ABIDE – WOULD PROPERLY BALANCE COMPETING INTERESTS.

II.

Our review of a trial court's determination for civil commitment under the SVPA is "extremely narrow." In re Civ. Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)). We "should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake,'" and there is a clear abuse of discretion. R.F., 217 N.J. at 174-75 (quoting D.C., 146 N.J. at 58). See also In re Civ. Commitment of A.Y., 458 N.J. Super. 147, 166 (App. Div. 2019). Judges who hear civil commitment cases are considered "specialists," finding "their expertise in the subject" is entitled to a "special deference." R.F., 217 N.J. at

A-0228-24

174. See also In re Civ. Commitment of J.S., 467 N.J. Super. 291, 303 (App. Div. 2021).

We "should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" R.F., 217 N.J. at 175 (quoting D.C., 146 N.J. at 58). "The appropriate inquiry is to canvass the significant amount of expert testimony in the record and determine whether the lower courts' findings were clearly erroneous." D.C., 146 N.J. at 58-59. If a "trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed." R.F., 217 N.J. at 175 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).

The SVPA was enacted "to protect other members of society from the danger posed by sexually violent predators." In re Civ. Commitment of J.M.B., 197 N.J. 563, 570-71 (2009). Thus, the SVPA allows the State to involuntarily commit an individual convicted of a sexually violent offense "who 'suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.'" R.F., 217 N.J. at 173 (quoting N.J.S.A. 30:4-27.26). For involuntary commitment, the State is required to establish that

> (1) that the individual has been convicted of a sexually violent offense; (2) that he suffers from a mental

abnormality or personality disorder; and (3) that as a result of his psychiatric abnormality or disorder, "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend."

[In re Civ. Commitment of W.W., 245 N.J. 438, 450 (2021) (quoting In re Civ. Commitment of D.Y., 218 N.J. 359, 380-81 (2014)).]

The State must prove all three elements by clear and convincing evidence.  Ibid. "Clear and convincing evidence is evidence that produces 'a firm belief or conviction' that the allegations are true; it is evidence that is 'so clear, direct and weighty and convincing' that the factfinder can 'come to a clear conviction' of the truth without hesitancy."  Ibid. (quoting R.F., 217 N.J. at 173).

The SVPA defines a mental abnormality as "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence."  N.J.S.A. 30:4-27.26.  The SVPA requires that "the mental condition must affect an individual's ability to control his or her sexually harmful conduct."  In re Civ. Commitment of A.H.B., 386 N.J. Super. 16, 24 (App. Div. 2006) (quoting In re Civ. Commitment of W.Z., 173 N.J. 109, 127 (2002)).  Thus, "the State must prove that the alleged predator's 'propensity to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others.'"  Ibid. (quoting N.J.S.A. 30:4-27.26).

A-0228-24

The SVPA further requires that a person must be likely to "engage in acts of sexual violence if not confined in a secure facility for control, care and treatment," due to mental abnormality or personality disorder. W.Z., 173 N.J. at 120 (quoting N.J.S.A. 30:4-27.26). Under element three of the statutory requirement, the State must show "a person is 'highly likely,' not just 'likely,' to sexually reoffend." R.F., 217 N.J. at 173 (quoting W.Z., 173 N.J. at 130).

We apply the same standard for initial involuntary commitment to a committee who has allegedly violated their conditional discharge. In re Civ. Commitment of E.D., 183 N.J. 536, 551 (2005) ("[I]n order for the State to cause the recommitment of a committee who has been conditionally discharged, the State must establish by clear and convincing evidence that the committee is highly likely not to control his or her sexually violent behavior and will reoffend.").

### III.

### A.

M.L.V. first argues that his conviction for aggravated assault, N.J.S.A. 2C:12-1(b)(1), does not qualify as a predicate offense under the SVPA since it did not contain a sexual element. Further, M.L.V. asserts his conviction does

not act as a predicate offense since his own account of the event does not include a "suggestion of sexual conduct." We are unpersuaded.

The SVPA provides that:

> "Sexually violent offense" means:
>
> . . . .
>
> > (b) any offense for which the court makes a specific finding on the record that, based on the circumstances of the case, the person's offense should be considered a sexually violent offense.
>
> [N.J.S.A. 30:4-27.26.]

Under this "catch-all" provision, "a court may consider the circumstances that led to the qualifying prior conviction. When that conduct is substantially equivalent to the sexually violent conduct encompassed by the offenses listed in subsection (a), then that prior conviction may provide the predicate for a commitment application under subsection (b)." J.M.B., 197 N.J. at 577 (emphasis added).

M.L.V.'s 2016 conviction was not one of the enumerated sexually violent offenses under N.J.S.A. 30:4-27.26. However, the State provided two credible and unrebutted expert opinions from Drs. Harris and Canataro. Dr. Harris opined that M.L.V.'s 2016 offense constituted a sexually based offense, pointing

to its similarities with M.L.V.'s prior offenses. Dr. Canataro also found a common pattern between the 2016 offense and M.L.V.'s other, older offenses. Dr. Canataro found all three offenses involved M.L.V. identifying, abducting and isolating vulnerable females, bringing his own weapon, sexually assaulting them, and ultimately leaving them naked. From Dr. Canataro's experience at the STU, he stated that finding these offenses sexual in nature based on the committee's prior history was common practice.

Considering the experts' testimony and the remainder of the record, the trial court found that M.L.V.'s 2016 offense was one of significant violence and involved significant sexual conduct. Our careful review of the record reveals that there is sufficient credible evidence in the record to support the court's findings. We discern nothing in the court's findings or analysis to be clearly erroneous.

B.

We next turn to M.L.V.'s contention that the trial court erred by not considering less restrictive alternatives to recommitment in its analysis.

M.L.V. asserts the trial court committed error by "skipping over intermediate measures and failing to properly weigh M.L.V.'s liberty interest." He contends this failure was a violation of his due process. Instead of being

recommitted to the STU, M.L.V. contends the court could have placed him on conditional discharge with orders specifying "he must avoid certain designated areas and that he refrain from exchanging money for sex."  Further, M.L.V. asserts that a proposed conditional discharge could order him to "[m]aintain[] steady employment, attending regular meetings with the specialized parole unit, and continuing out-patient treatment . . . ."  We are unconvinced.

Our Supreme Court has long held "it is the role of the trial court 'to "mold" an appropriate order based upon' the court's evaluation of the evidence."  E.D., 183 N.J. at 551 (quoting State v. Fields, 77 N.J. 282, 302 (1978)).  "The determination of the suitable level of restraint is a matter entrusted to the sound discretion of the reviewing judge based on his first-hand evaluation of the particular case and is one as to which he must be accorded a wide range of flexibility."  Fields, 77 N.J. at 302.

Here, the trial court found, using a clear and convincing evidence standard, that M.L.V. violated his conditional release.  The ample record shows that M.L.V. was a "sexually violent predator in need of civil commitment" to the STU and that no other terms of conditional discharge would be appropriate.  See E.D., 183 N.J. at 551; N.J.S.A. 30:4-27.32(c)(3).  Additionally, Dr. Harris

A-0228-24

and Dr. Canataro both opined that if not committed to the STU, M.L.V. would be highly likely to engage in future acts of deviant sexual behavior.

We conclude that the trial court's finding that the State met its burden, by clear and convincing evidence, to support M.L.V.'s recommitment is well supported. Alternatives to recommitment, including added or supplemental terms for another conditional discharge, are <u>not</u> appropriate for M.L.V., given his well-documented, lengthy, and concerning history.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division