216 N.J. Super. 297 (1987)
523 A.2d 686
IN THE MATTER OF N.J.A.C. 14A:20-1.1 ET SEQ., IN THE MATTER OF N.J.A.C. 14A:20-1.9.
Superior Court of New Jersey, Appellate Division.
Argued February 25, 1987.
Decided March 26, 1987.
*298 Before Judges DREIER, SHEBELL and STERN.
Richard B. McGlynn argued the cause on behalf of appellants (Stryker, Tams & Dill, attorneys; Richard B. McGlynn of counsel; Mark L. Mucci on the brief).
Carla Vivian Bello, Deputy Attorney General, argued the cause on behalf of respondents Department of Energy and Board of Public Utilities (James J. Ciancia, Assistant Attorney General, of counsel; Carla Vivian Bello on the brief).
The opinion of the court was delivered by STERN, J.A.D.
Appellants, the New Jersey Utilities Association Inc. (NJUA) and seven major public utilities, appeal from the promulgation by the Department of Energy (DOE) of regulations concerning energy conservation (hereinafter "conservation regulations"). The regulations, codified as subchapter 1 ("Public Utilities *299 Programs") of Chapter 20 ("Energy Conservation Program Development and Public Utility Planning Evaluations") of the DOE regulations, relate to energy conservation measures to be taken by utilities in the State with the costs either to be absorbed by the utilities or charged to their customers. See N.J.A.C. 14A:20-1.1 et seq.
The first of the two appeals concerns a claim regarding the virtual elimination of the Board of Public Utilities (BPU) from the approval process as evidenced by section 1.9 of the regulations. Appellants contend that the BPU has statutory jurisdiction in this area and that DOE operated beyond its legislative mandate. Appellants emphasize that this is particularly true because the costs might not be included in the rate base of the utilities.
The second appeal is from the readoption of section N.J.A.C. 14A:20-1.9 while the first appeal was pending. The amendment was designed to avoid or moot the arguments advanced on the first appeal.
We affirm the promulgation of the regulations in their present form, subject to the interpretation which we give to them herein.

I.
On December 3, 1984, DOE published its proposed conservation regulations in the New Jersey Register for public comment. 16 N.J.R. 3293. Following a public hearing on November 12, 1985, DOE filed with the Office of Administrative Law (OAL) a notice of adoption of the conservation regulations. The newly adopted regulations were published on February 3, 1986. See 18 N.J.R. 290.
Following publication appellants filed their appeal from the promulgation and obtained a stay of enforcement. Appellants amended their notice of appeal to include the BPU as a respondent. Subsequently, on May 19, 1986 DOE proposed readoption of section 1.9. See 18 N.J.R. 1092. Section 1.9 in its present *300 form was adopted and published in the New Jersey Register on July 21, 1986. See 18 N.J.R. 1485.
Following the readoption of section 1.9, appellants filed a second notice of appeal challenging the DOE authority to proceed with the readoption process pending disposition of the original appeal. We consolidated the appeals.

II.
The energy conservation regulations require that all electric and natural gas public utilities in the state periodically submit to DOE a proposed plan for energy conservation containing certain specified program elements. These plans are to be reviewed and approved by DOE, which is to conduct an evaluation of the adequacy and feasibility of each plan. N.J.A.C. 14A:20-1.8(c). After DOE approval, the plans are to be submitted to the BPU "for review consistent with the BPU's statutory authority." N.J.A.C. 14A:20-1.9, as amended.
Section 1.1 sets forth the intent of the regulations:
The purpose of the regulations in this subchapter is to promote the rapid and effective installation and use of cost effective energy conservation measures, devices and innovations in the houses and apartments of New Jersey residents. The principal means employed by these regulations is a program of investments and loans by electric and gas utilities, marketing strategies, economic incentives, specified annual targets, and a requirement that utilities incorporate these conservation initiatives into their planning processes. [N.J.A.C. 14A:20-1.1].
The regulations require that the conservation plans submitted by the individual utilities contain annual goals for completion of energy audits; financial incentives provided by the utilities for customer purchase, installation and/or use of energy conservation or efficiency measures; load management plans with certain specified designs; promotion of alternative technology programs; and a marketing strategy with certain required elements. See N.J.A.C. 14A:20-1.4 and -1.5.
The initial version of the planning regulations, published in the New Jersey Register of December 3, 1984, limited input from the BPU to determining how the energy conservation *301 investments, costs and expenses incurred by the utilities should affect their rates. As originally proposed N.J.A.C. 14A:20-1.9 demonstrated the BPU's limited role:
14A:20-1.9 Plan for proper rate treatment
The BPU shall, within 90 days of the effective date of this subchapter, and at least annually thereafter, prepare and submit a plan to the Department [of Energy] for the proper rate treatment of energy conservation investments, costs and expenses incurred by public utilities as they comply with this chapter. The plan shall include but need not be limited to financial incentives to promote the achievement of cost-effective energy conservation goals and targets, and financial penalties and disincentives for the failure to achieve these goals and targets. [16 N.J.R. 3296]
This section, subsequently revised and reproposed, is the main source of appellants' objection to the conservation regulations. Appellants are concerned that by honoring the DOE regulations they will be required to expend large sums of money which might not be included or approved by BPU in their rate base, at least without BPU approval of the plan. Appellants also contend that energy rates might ultimately be affected by implementation of the plans, and that rate setting is the exclusive function of BPU.
After the public hearing and a review of the conservation regulations, the Attorney General issued a formal opinion letter dated October 3, 1985 to then DOE Commissioner Leonard S. Coleman, Jr. questioning the limited role given to the BPU in evaluation and approval of the plans. After noting DOE's authority in energy conservation and development and BPU's responsibility for overseeing the financial integrity of the public utilities, the Attorney General advised that section 1.9 should be revised to provide for BPU's examination of the utility conservation programs after they have been approved by DOE. Specifically, the Attorney General stated,
... unilateral implementation by the D.O.E. of a mandatory utility incentive program may impair the financial integrity of a utility. The financial incentives embodied in the regulations are intimately connected with the financial structure and capital development of utilities in their primary and special function as part of the energy resource system of the State. The proposed incentive regulations, by their very nature, impact upon the pattern of investment and operating expenditures of the utilities involved. This management and oversight *302 role is the essential responsibility of the B.P.U. in its ratemaking capacity.... It would be inconsistent with these complimentary but distinct responsibilities of the D.O.E. and the B.P.U. for the D.O.E. to attempt to unilaterally mandate a particular form of investment or program of substantial operating expenses.
The opinion concluded by advising
that a mandatory utility conservation program, unilaterally implemented by the D.O.E., would exceed the D.O.E.'s statutory authority and intrude upon the competence and authority of the B.P.U. The D.O.E. may, however, require that utilities file certain plans and reports with it for review. The D.O.E. may then approve a utility's conservation plan. This approved plan must then be examined by the B.P.U. to determine its impact on the financial posture of the utility, its ratepayers and on the quality and adequacy of service and then implemented by it. A conservation plan should meet with the B.P.U.'s approval to the maximum extent reasonable and practicable; the burden being on those who seek to prevent implementation of the D.O.E. approved conservation plan. It is our opinion, that such designation of functions in the context of proposed D.O.E. rules will properly balance the legislatively authorized complementary roles of the D.O.E. and B.P.U. in the area of energy conservation.
On November 8, 1985 DOE adopted the regulations essentially as proposed, except for section 1.9 which contained new language that made no mention of BPU. As filed with the OAL on November 12, 1985, section 1.9 read as follows:
The [DOE] shall approve, approve with conditions, or not approve, each utility's energy conservation plans upon the completion of the report and evaluation required by [N.J.A.C.] 14A:20-1.8(c). The [DOE] shall then order each such utility to implement its plan as approved or as approved with conditions.
However, various communications occurred within the administration relating to the role of BPU, and section 1.9 was amended after the November 12 filing with OAL, to read as published on February 3, 1986:
The [DOE] shall approve, approve with modifications, or reject each utility's energy conservation plans upon the completion of the report required by N.J.A.C. 14A:20-1.8(c). The [DOE] shall then transmit the utility conservation plan to the BPU for review consistent with the BPU's statutory authority. The BPU shall have 90 days to take action on the plan. No utility conservation plan may be implemented during this 90 day period. However, if within 90 days of receipt of a public utility conservation plan, the BPU does not take action then such plan shall be deemed approved by the BPU. The utility shall then implement the conservation plan immediately. [18 N.J.R. 304 (emphasis added)].
Hence, the section 1.9 which appeared in the New Jersey Register on February 3, 1986 differed substantially from the *303 version of that section that was filed with the OAL in November, 1985.
After the appeal challenging the regulations was filed the Attorney General apparently determined that N.J.A.C. 14A:20-1.9 as adopted had not been filed with the OAL within one year of its publication in the New Jersey Register on December 3, 1984 and, therefore, was not enforceable. Therefore, DOE on May 19, 1986 reproposed section 1.9, see 18 N.J.R. 1092, 1110, and on July 21, 1986 notice of DOE's adoption of this section appeared in the New Jersey Register. 18 N.J.R. 1485.[1] However, before the readoption occurred appellant's motion to stay enforcement of the regulations had been granted.
On August 29, 1986, the Governor's Reorganization Plan for the Department of Energy took effect. See Dalton v. Kean, 213 N.J. Super. 572 (App.Div. 1986). As a result of this reorganization plan, the functions of DOE relating to the subject under review were transferred to the Department of Commerce and Economic Development (DCED). No challenge to the regulations is premised on that transfer, and it is undisputed that the regulations in dispute are now regulations of DCED. For purposes of this opinion, however, we will continue to refer to the agency as DOE, since the regulations use that designation.

III.
Appellants argue that N.J.A.C. 14A:20-1.9 was not severable from the rest of the conservation regulations and consequently could not properly be adopted separately. Appellants also claim that their filing of a notice of appeal prohibited DOE from reproposing and readopting section 1.9.
*304 Between DOE's filing of its notice of adoption of the conservation regulations with the OAL on November 12, 1985 and their publication in the February 3, 1986 New Jersey Register, substantial changes were made in the language of section 1.9. Because those changes were made more than one year after N.J.A.C. 14A:20-1.1 et seq. were initially proposed, section 1.9 was deemed by the Attorney General to have expired in accordance with N.J.A.C. 1:30-4.2(d). However, the Attorney General determined that section 1.9 was severable from the other sections of the regulations and advised DOE to repropose and readopt only that section. Following that advice the DOE proceeded to repropose and adopt that single section of the regulations.
Without section 1.9, the conservation regulations would be seriously if not fatally defective because that section contains the only provision for BPU involvement in the evaluation and implementation of the plans. If, however, section 1.9 is enforceable as adopted, the regulations must be evaluated as a whole.
The severability issue is mooted by the DOE's subsequent reproposal and readoption of section 1.9 during the period when enforceability of the regulations had been stayed. Hence, if the regulations including section 1.9 are valid, they will take effect following our decision as an integrated whole.
Appellants, however, contend that the filing of the notice of appeal and the subsequent stay of April 29, 1986 divested DOE of authority to take action on the regulations and, in particular, of authority to repropose and readopt section 1.9. We disagree. DOE was prohibited from implementing and enforcing the regulations, not from readopting them to moot the challenge to their validity on appeal. See Application of Madin/Lord Land Dev. Intern., 103 N.J. 689 (1986).

IV.
N.J.S.A. 52:27F-11g provides the DOE with specific authority to "[d]esign, implement, and enforce a program for the conservation *305 of energy in commercial, industrial, and residential facilities." N.J.S.A. 52:27F-11b also authorizes the Department to "[c]ollect and analyze data" on present and future energy resources, to require energy users, distributors and producers to submit such data, and to promote energy conservation and efficiency through education and development of new sources and experimental projects. DOE is also empowered to adopt a ten year master plan "on the production, distribution, consumption and conservation of energy in this State." N.J.S.A. 52:27F-14a.
The legislative "grant of authority to an administrative agency is to be liberally construed" in order to permit the agency to carry out its statutory responsibilities. New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978). Moreover, the courts "should readily imply such incidental powers as are necessary to effectuate fully the legislative intent", ibid., and DOE has the explicit authority to adopt regulations necessary to effectuate the purpose of the act creating DOE. See N.J.S.A. 52:27F-11q. See also N.J.S.A. 52:27F-32.
While the conservation regulations therefore would appear to be within DOE's authority to "[d]esign, implement, and enforce a program for the conservation of energy" under N.J.S.A. 52:27F-11g, the financial incentives and load management elements of the regulations may impinge upon BPU responsibility to assure the financial integrity of the utilities for the ultimate benefit of the public. BPU is granted the exclusive authority to fix just and reasonable rates to be charged by public utilities. N.J.S.A. 48:2-21(b)1.[2] Moreover, "BPU was intended by the *306 legislature to have the widest range of regulatory power over public utilities." A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't., 90 N.J. 666, 685 (1982). In carrying out its rate-making function, the BPU is required by N.J.S.A. 52:27F-6a to "be independent of any supervision or control by the [DOE] ... except as otherwise expressly provided in this act." The rates "must be sufficient to permit the [utility] to maintain its financial integrity, attract capital ..., and provide a return to the equity owner." New Jersey Bell Telephone Co. v. State, 162 N.J. Super. 60, 73 (App.Div. 1978).
As the Attorney General stated in his opinion letter of October 3, 1985 the conservation plans
must then be examined by the B.P.U. to determine its impact on the financial posture of the utility, its ratepayers and on the quality and adequacy of service and then implemented by it. A conservation plan should meet with the B.P.U.'s approval to the maximum extent reasonable and practicable.
The question before us is whether N.J.A.C. 14A:20-1.9, as adopted, sufficiently recognizes the legislative mandate of BPU or unduly interferes with it. We examine the issue with recognition that on this appeal BPU joins DOE and DCED in urging enforceability and validity of the regulations. It appears therefore that while section 1.9 does not expressly require BPU approval, BPU supports the regulations and feels no undue constraint by required review within 90 days of presentation. Moreover, a rule of an administrative agency is subject to the same canons of construction as a statute, Essex County Welfare Bd. v. Klein, 149 N.J. Super. 241, 247 (App.Div. 1977), and we infer that the respondents would all prefer a construction upholding the validity of the regulations rather than a declaration of invalidity. Cf. State v. De Santis, 65 N.J. 462 (1974). See also State v. Ramseur, 106 N.J. 123, 200-201 (1987).
It is basic in the construction of legislation that every effort should be made to harmonize the law relating to the same subject matter.

*307 Statutes in pari materia are to be construed together when helpful in resolving doubts or uncertainties and the ascertainment of legislative intent. Such enactments are to be considered `as a homogeneous and consistent whole, giving effect to all their provision.' [State v. Green, 62 N.J. 547, 554-555 (1973) (quoting Watson v. Jaffe, 121 N.J. Super. 213, 214 (App.Div. 1972)]
We conclude that this principle should be applied to the construction of regulations process and that section 1.9 can be read to require rejection by DCED of the respective plans in the absence of BPU approval. Cf. Hinfey v. Matawan Regional Board of Education, 77 N.J. 514, 531-533 (1978).[3] As BPU has expressly agreed to be bound by the 90 day provision we read section 1.9 to require BPU approval or rejection of the submissions within that period.[4] While the section does not expressly address the subject, BPU can reject a plan if not able to approve it within 90 days, and if rejected the plan shall not take effect. So construed, plans can be legitimately required and approved within the authority of DCED (in lieu of DOE), but with respect to utilities regulated by BPU, they cannot be implemented without concurrent approval of the BPU, which is the agency having jurisdiction to regulate utilities. However, in instances of overlapping jurisdiction, BPU has worked with other agencies in the past, and there is no sound reason to declare the regulations invalid or to construe them so as to prevent enforceability. See A.A. Mastrangelo, Inc. v. Environmental Protec. Dep't., supra, 90 N.J. at 680-689; Elizabeth v. State, Dept. of Env. Protect., 198 N.J. Super. 41 (App.Div. 1984).
As construed herein the regulations are valid and enforceable.
Affirmed.
NOTES
[1] The language as contained in the February 3, 1986 Register, 18 N.J.R. 304, is identical to the present N.J.A.C. 14A:20-1.9 except for the substitution of the word "the" for the word "a" in a phrase on the seventh line of the current regulation.
[2] In carrying out its rate-making function, the BPU is required by N.J.S.A. 52:27F-6a to "be independent of any supervision or control by the [DOE] ... except as otherwise expressly provided in this act." BPU is "in but not of" DOE. See Dalton v. Kean, supra. The transfer of DOE functions does not have impact on this subject, however, because BPU decision making authority was and is autonomous of DOE, in which BPU remains.
[3] We have reservations concerning the authority of one agency to promulgate a regulation in effect compelling another agency to act and inferring approval from its failure to act. However, here the BPU has not objected to section 1.9 and therefore we do not decide the issue. Compare A.A. Mastrangelo v. Environmental Protec. Dep't., supra at 680-689.
[4] We also read section 1.9 to authorize referral to BPU only if a plan is approved by DCED.