**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1620-23

SAID A. SAID,

     Petitioner-Appellant,

v.

NEW JERSEY STATE POLICE,

     Respondent-Respondent.

_____

Argued January 21, 2026 – Decided May 4, 2026

Before Judges Susswein and Chase.

On appeal from the New Jersey Division of State Police.

Philip Nettl argued the cause for appellant (Benedict Altman & Nettl, LLC, attorneys; Philip Nettl, on the brief).

Leo R. Boerstoel argued the cause for respondent (Jennifer Davenport, Acting Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Handel T. Destinvil, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Said A. Said appeals a December 18, 2023, final agency decision of the New Jersey State Police (NJSP) denying his application to renew a bounty hunter license. The denial was based on charges that Said violated provisions of the Bounty Hunter Licensing Act (BHLA), N.J.S.A. 45:19-30 to -42. After a hearing, an Administrative Law Judge (ALJ) affirmed the denial and the NJSP Superintendent issued a final agency decision adopting the ALJ's findings. After reviewing the record in light of the governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record.

On February 20, 2018, NJSP Detective James Clay of the Private Detective Unit received a complaint that several unlicensed bounty hunters were operating out of the Jersey City/Newark area. According to Detective Clay's investigation report, the complainant stated that John Virtuet contacted him seeking assistance with a "bail skip"[1] for Stanley Edwards and another fugitive because Virtuet did not have a bounty hunter license. The complainant also stated that Virtuet was conducting bounty hunter work with Said and Roberto

---

[1] This is a reference to a fugitive.

A-1620-23

Rivera. Detective Clay's report indicated that, as of February 20, Said was licensed and associated with AAA Bail Bonds, but Rivera and Virtuet did not have a bounty hunter license in the State of New Jersey. Clay conducted a criminal history search on Edwards and confirmed that he had been arrested and processed at the Bergen County jail on February 4, 2018.

Detective Clay discovered that Said apprehended Edwards on February 4 and turned him over to authorities. Detective Clay conducted interviews with Said, Rivera, Dayshawn Rodriguez, and Patricia Edwards, Stanley Edwards' mother.

Rivera told Clay that he first became aware of Edwards when someone from Apple Bail Bonds sent him a photograph of Edwards and a copy of Edwards' bail-forfeiture notice. Rivera then contacted Said "to work the case" as a bounty hunter. Rivera stated that Said solicited his help to capture Edwards and confirmed Said was acting as a bounty hunter in that case. Rivera also stated that Virtuet, a licensed bail bondsman—not a licensed bounty hunter—and Donald Conner, also not a licensed bounty hunter to his knowledge, were "acting in a bounty hunter capacity along with Said."

According to Rivera, the four began surveilling Patricia Edwards' home on the day of the capture, February 4, 2018. They observed a man believed to

3

be Edwards come out of a vehicle and enter the home. They decided to wait to confirm it was Edwards. After half an hour, they "hit the house" with Virtuet and Conner entering, Said at the front of the house, and Rivera at the back of the house. Rivera stated that eventually, Virtuet and Conner found Edwards and arrested him. Afterwards, Said and Rivera entered the home.

Edwards was placed in Rivera's car, and Rivera drove Edwards to Said's office for processing. Said, Viruet, and Conner later transported Edwards to the Bergen County Jail. Said paid Rivera $300 in cash for his role in Edwards' apprehension.

Patrcia Edwards confirmed in her interview with Clay that Rivera was one of the persons who came to her home that day.

During his phone interview with Clay, Said stated that Rivera and Virtuet "don't work for [him]." Said acknowledged that Virtuet and Rivera were not licensed bounty hunters in this State. He also told Clay that Rivera was a licensed bondsman and Virtuet owns a bail bonds company.

On July 19, 2018, Said was charged with knowingly employing a person who has been convicted of a crime in the first to fourth degree, offenses relating to controlled dangerous substances, or offenses where employment of the person is contrary to public interest, N.J.S.A. 45:19-36(b); and employing a person

4

without performing a requisite criminal history records background check or while knowing of a disqualifying crime or offense, N.J.S.A. 45:19-36(c). The Passaic County Prosecutor's Office downgraded the charges to false imprisonment, N.J.S.A. 2C:13-3, and remanded the matter to Paterson municipal court.[2]

The record shows that Said held a New Jersey bounty hunter license from April 1, 2014, which was set to expire on May 15, 2018. In April 2018, prior to the expiration date, Said applied to renew his bounty hunter license.

On August 21, 2018, Lieutenant Robert Cowden of the NJSP Detective Unit notified Said in a letter that the NJSP would not renew his bounty hunter license because of Said's alleged violations of the BHLA. The letter referred to N.J.A.C. 13:55B-2.7(a), which permits the NJSP to deny a renewal request if, among other things: (1) the applicant had violated the BHLA; (2) the applicant had failed to comply with the applicable New Jersey regulations pertaining to bounty hunting; (3) the applicant had "demonstrated bad moral character, incompetence, or untrustworthiness"; or (4) if good cause exists, based on the interests of public safety.

---

[2] On April 10, 2019, after his renewal was denied, all of the criminal charges against Said were dismissed.

A-1620-23

The letter noted that police arrested Said on July 19, 2018, and the charges related to Said's failure to conduct criminal background checks when hiring bounty hunters. The letter explained that his license was not renewed "based on the listed violations" and advised him of his right to request a hearing to challenge the non-renewal decision.

Said appealed the denial whereupon the matter was referred to the Office of Administrative Law (OAL) as a contested case.

On April 26, 2023, the ALJ conducted an administrative hearing. The judge heard testimony from Clay, Rivera, and Said.

Rivera testified that he considered Said his "boss" and explained that his position was "like investigating cases, locating fugitives." He stated that he never had a bounty hunter license. Rivera confirmed his involvement in Edwards' apprehension, which he became aware of when Said called him about it and the two met in person. He testified regarding his involvement in Edwards' arrest and noted he only got paid if he arrested the fugitive.

Clay testified regarding his recorded interviews and other reports prepared by the NJSP detectives, which were submitted into evidence. Clay also testified to his investigation results:

A-1620-23

Q. Okay. Based on your investigation were any of those other individuals [besides Said] legally allowed to be involved with arresting [Edwards] on that date?

A. No, they were not.

Q. Why is that?

A. Well, [Viruet] did not qualify for a bounty hunters license nor would he qualify to do work as a bounty hunter because he had a criminal history. [Rivera] did not have a bounty hunter license and [Conner] did not have a bounty hunter license. Conner was an investigator for a [Private Investigations] company owned by Matt Sulman (phonetic) identified as Xforce Investigation, so . . . none of the parties involved besides [Said] were licensed bounty hunters.

Clay then explained what Rivera told him about his involvement in Edwards' arrest, stating:

[H]e gave specifics as to how they came to arrest [Edwards]. They set up on his block doing surveillance in separate cars. They observed an individual matching [Edwards'] description going into the residence owned by his mother, Patricia Edwards. They waited for a period of time after he went into the residence before hitting the house and effecting the arrest.

In the initial decision, dated September 20, 2023, the ALJ framed the central issue in the case as "whether [Said] employed unlicensed bounty hunters to perform bounty hunter work for him, and if so, does this justify the denial of the renewal of his [bounty hunter] license." After summarizing the testimony,

7

the ALJ found Clay "sincere and credible," but found that Said and Rivera were "not as credible and not consistent with the facts, the other reports, and the timeline in this matter." The ALJ found that "the individual or individuals used by [Said] to assist in the arrest of [Edwards] were conducting work as bounty hunters" and that "in exchange for the offer for a fee from [Said], Rivera, an unlicensed [bounty hunter], conducted an investigation, performed surveillance and was present during the arrest of [Edwards] on February 4, 2018."

The ALJ made the following additional factual findings:

1. [Said] was a licensed bounty hunter.

2. [Said] was involved in the capture of [Edwards] on February 4, 2018.

3. [Said] paid [Rivera], an unlicensed [bounty hunter,] for intelligence which was obtained through surveillance and other investigation in connection with the apprehension of [Edwards].

4. [Said] paid [Rivera] a cash fee for his assistance in connection with the arrest following the completion of the arrest and surrender of him to the authorities.

The ALJ concluded that Said had unlawfully engaged Rivera, who was not licensed to perform bounty hunter work. The ALJ noted that "[a]lthough Rivera may not have been an 'employee' in a traditional employer-employee relationship, the language of the statue defines a [bounty hunter] as anyone

A-1620-23

engaged for a 'fee, hire or reward.'" See N.J.S.A. 45:19-29. Moreover, the ALJ reasoned that "[t]he statute defines [bounty hunter] work as anyone who 'engages in or assists in the apprehension, arrest, detention, confinement, surrender or securing of any such person; or keeps any such person under surveillance.'" See ibid.

The ALJ also explained:

> The testimony from the petitioner, as well as the evidence and testimony from other witnesses, demonstrates that Rivera was paid for intelligence that led to the arrest of [Edwards]. The work he conducted included investigation [and] surveillance, and there is no dispute that he was present for the arrest of [Edwards]. The crux of [Said]'s argument is that he was paying people for confidential information, and this does not constitute employment, nor were these individuals conducting [bounty hunter] work. However, due to the nature of this type of work, and the need [for] strict regulation of quasi-law enforcement work, the statue is very clear what constitutes [bounty hunter] work. The work of confidential informants falls squarely within the definition of [bounty hunter] work, and due to the nature of this type of work, licensing is required to engage in this type of work. Moreover, due to the nature of this type of work, individuals with criminal convictions are not permitted to engage in this work.

Based on those findings, the ALJ affirmed the denial, concluding that the "decision of the [NJSP] to deny the renewal of the bounty hunter license on the

grounds of retention of unlicensed individuals to perform bounty hunter work which demonstrated bad moral character was proper."

The NJSP Superintendent adopted the ALJ's findings and concluded that Said's actions violated N.J.A.C. 13:55B-2.7(a)(4), (5), (7), and (8). The final decision concluded that the record "clearly support[ed]" the finding that Said had employed unlicensed persons to perform bounty hunter work and found that the ALJ had properly evaluated the documentary evidence and witness testimony. The Superintendent explained that Said had engaged and paid Rivera to do work that qualified as "bounty hunter" services under N.J.S.A. 45:19-29, which justified the ALJ's conclusion that he had exhibited "bad moral conduct."

Furthermore, the final decision noted that the nonrenewal was justified because: N.J.A.C. 13:55B-2.7(a)(4) permits nonrenewal if an applicant "is alleged to have violated one of the provisions of . . . the [BHLA];" N.J.A.C. 13:55B-2.7(a)(5) permits nonrenewal if an applicant has "failed to comply with any of the rules in this chapter;" N.J.A.C. 13:55B-2.7(a)(8) authorizes nonrenewal when "good cause exists . . . in the interest of public safety;" and the facts justified nonrenewal on those bases.

This appeal followed. Said raises the following contentions for our consideration:

<u>POINT I</u>

The Superintendent's decision to deny [Said]'s Bounty Hunter License was arbitrary, capricious, and unreasonable, because the credible evidence did not establish any indication of a violation of the statutes regulating bounty hunters during the apprehension of Stanley Edwards, and the Superintendent failed to consider [Said]'s exemplary record as a Bounty Hunter over the course of his career as it affected his "moral character."

    A. Because [NJSP] expressly based the non-renewal on [Said]'s arrest, which then resulted in a dismissal, the Superintendent's decision to deny [Said]'s license based upon a $300 payment to Roberto Rivera instead was arbitrary, capricious, and unreasonable.

    B. The undisputed facts do not support findings of wrongdoing by [Said], as Roberto Rivera was not an "employee"

    C. [NJSP]'s finding of [Said]'s "moral character" did not account for contrary information in the record.

II.

We begin our analysis by acknowledging the legal principles governing this appeal. The scope of our review is narrow. "'Judicial review of an administrative agency action is limited' because respect is due to the 'expertise and superior knowledge' of an agency in its specialized field." <u>Francois v. Bd. of Trs. of Pub. Emps.' Ret. Sys.</u>, 415 N.J. Super. 335, 347 (App. Div. 2010)

11

(quoting Hemsey v. Bd. of Trs., Police & Firemen's Ret. Sys., 198 N.J. 215, 223 (2009)). "An appellate court affords a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). To that end, a "reviewing court 'should not reverse'" an administrative agency's decision "unless it is arbitrary, capricious or unreasonable or it is not supported by substantial credible evidence in the record as a whole." Ibid. (quoting Prado v. State, 186 N.J. 413, 427 (2006)). The party challenging the administrative action bears the burden of making that showing. Ibid.

To determine if an administrative agency's decision is arbitrary, capricious, or unreasonable, an appellate court must ascertain:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Ibid. (quoting In re Stallworth, 208 N.J. 182, 194 (2011)).]

12

When undertaking that analytical process, "[t]he choice of accepting or rejecting testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Oceanside Charter Sch. v. Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011) (quoting Application of Howard Sav. Bank, 143 N.J. Super. 1, 9 (App. Div. 1976)). Deference is "especially appropriate when the evidence is largely testimonial and involves questions of credibility." Matter of J.W.D., 149 N.J. 108, 117 (1997) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)). It is not our place to second-guess or substitute our judgment for that of the agency and, therefore, we do not "engage in an independent assessment of the evidence as if [we] were the court of first instance." State v. Locurto, 157 N.J. 463, 471 (1999).

"[A]lthough the scope of review of an agency's decision is circumscribed, an appellate court's review of an agency decision is 'not simply a pro forma exercise in which [the court] rubber stamp[s] findings that are not reasonably supported by the evidence.'" Mejia v. N.J. Dep't of Corr., 446 N.J. Super. 369, 376-77 (App. Div. 2016) (alterations in original) (quoting In re Taylor, 158 N.J. 644, 657 (1999)); accord Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018). Furthermore, "we are not bound by an agency's construction

of a statute just as we are not bound by its other, strictly legal determinations."

Patel v. N.J. Motor Vehicle Comm'n, 200 N.J. 413, 420 (2009).

Turning to substantive legal principles, the law provides that a person seeking to conduct the business of bounty hunting in this State must be licensed by the Superintendent of NJSP. N.J.S.A. 45:19-30. Pursuant to N.J.A.C. 13:55B-2.7(a), the Superintendent has the authority to deny, revoke, suspend, or refuse to renew a bounty hunter license for certain reasons, including:

> 4. The person holding a bounty hunter license, applying for a license, or applying for renewal of a license, is alleged to have violated one of the provisions of N.J.S.A. 45:19-28 [to -42], the [BHLA];
>
> 5. The person holding a bounty hunter license, applying for a license, or applying for renewal of a license, has failed to comply with any of the rules in this chapter;
>
>  . . . .
>
> 7. The person holding a bounty hunter license, applying for a license, or applying for renewal of a license, has demonstrated bad moral character, incompetence, or untrustworthiness; or
>
> 8. The Superintendent determines that good cause exists to deny, revoke, suspend, or refuse, renewal of a bounty hunter license in the interest of public safety.

A-1620-23

III.

We first address defendant's contention that the final agency decision is arbitrary, capricious or unreasonable. As noted, Said makes three principle arguments for reversal: (1) "the agency's decision did not follow the law, as it did not follow the original reasons expressed in the notice of denial, violating [Said]'s right to [d]ue [p]rocess;" (2) "the evidence did not support the agencies findings, as confidential informants are not 'employees' of a bounty hunter within the meaning of the statute, and [NJSP]'s own credible witness, [Detective] Clay, acknowledged that sometimes street intelligence is necessary to bounty hunting work;" and (3) "the agency clearly erred by not acknowledging [Said]'s decades of honorable performance of his responsibilities as a bounty hunter and bail bondsman, including bringing approximately 10,000 fugitives to justice, in determining whether his 'moral character' was impugned by a single incident of paying [Rivera] to stay out of his way." We address these arguments in turn.

A.

We are unpersuaded by Said's argument that his due process rights were violated. Said contends that NJSP was "bound by the reasons given in their denial letter, lest [Said] will be denied [d]ue [p]rocess guaranteed by N.J.A.C.

15

13:15B-6.3." Ibid. He further argues the denial should have been vacated when the charges were dismissed.

We note that Said cites no published precedent to support his contention that NJSP is bound by the initial letter. Further, the record belies the notion that he was not provided adequate notice of the several grounds for the non-renewal decision, depriving him of notice and opportunity to respond at the OAL hearing.

On August 21, 2018, NJSP served Said with notice of nonrenewal pursuant to N.J.A.C. 13:55B-6.3(a). The letter refers to his July 2018 arrest for "knowingly hiring unlicensed individuals who had criminal convictions which would preclude them from employment." Clearly then, Said was aware that part of the allegations raised by NJSP were based on the fact that he allegedly employed individuals who were unlicensed.

Further, Said does not identify any point in time at which he did not comprehend the several different reasons for denial that might indicate a lack of notice in violation of due process principles. Said's counsel never objected to NJSP's opening statement and so far as the record shows never objected to the proceedings based on lack of notice. Opening statements made by Said's counsel, moreover, show he understood the reasons for the denial and the fact-

16

sensitive issues pertaining to those reasons. For example, counsel referred to "[t]he allegations that [Said] has a history of employing unlicensed bondsmen that's going to come from [Rivera]."

Moreover, the ALJ after opening statements confirmed the issues to be litigated at the hearing, stating:

> [The ALJ]: Okay. Just so I understand the basic argument is <u>that these individuals who were there were not there at the direction of [Said], they were not employees of [Said]</u>, he didn't request that they, you know, show up at this house . . . . and they were involved . . . in bringing in the skips. But is that the basic allegation? I'm going to hear proof that were these people there because [Said] asked him to be there, were they helping [Said], were they employees of [Said], or did they just happen to be there. Is that the issue?
>
> [Said's Counsel]: It depends on the person we're talking about, Your Honor. [Rivera] who is going to be one of [NJSP's counsel's] witnesses, he was there on his own. [Conner] who is a licensed private investigator he brought my client information about where to find [Edwards].
>
> [(Emphasis added).]

In sum, there is no indication in the record that Said was not given the reasons for denial before the hearing. His due process arguments are thus unavailing.

A-1620-23

B.

We next address Said's contentions with respect to whether he violated the BHLA by employing an unlicensed person.  N.J.A.C. 13:55B-4.1(a) provides:

> Under the [BHLA], licensed bounty hunters may employ as many persons as the licensee may deem necessary to assist the licensee in the licensee's work and in the conduct of the licensee's business, provided that:
>
> 1.   A person employed to perform any of the functions, activities or services of a bounty hunter as defined in N.J.A.C. 13:55B-1.3, is also licensed as a bounty hunter in accordance with N.J.A.C. 13:55B-2.

Here, the ALJ stated that, "[a]lthough Rivera may not have been an 'employee' in a traditional employer-employee relationship, the language of the statue defines a [bounty hunter] as anyone engaged for a 'fee, hire or reward.'" The judge also made the following relevant factual finding, which the Superintendent accepted:  "[Said] paid [Rivera] a cash fee for his assistance in connection with the arrest following the completion of the arrest and surrender of him to the authorities."

18

The administrative code does not define the term "employed." Said, in arguing Rivera cannot "reasonably" be Said's "employee[],"[3] suggests the test this court should utilize is the "ABC" test of N.J.S.A. 43:21-19, which is used in the wage claim context. NJSP, citing Grillo v. State, 469 N.J. Super. 267, 274 (App. Div. 2021), proposes using the ordinary meaning of the word as is done with any other statute/administrative code. The Superintendent did not expound on the definition of "employed" in his final decision.

We agree with the ALJ and Superintendent's construction of the term "employed" as used in the context of the BHLA. In doing so, we reiterate that we review matters of statutory interpretation de novo. Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294 (2017). "[A] rule of an administrative agency is subject to the same canons of construction as a statute." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 340 (App. Div. 2009) (alteration in original) (quotation marks omitted) (quoting In re N.J.A.C. 14A:20-1.1, 216 N.J. Super. 297, 306 (App. Div. 1987)). A reviewing court's primary "objective [in] statutory interpretation is to discern and effectuate the intent of the Legislature." Murray v. Plainfield Rescue Squad, 210 N.J. 581,

_____

[3] We note that in his appeal brief, Said acknowledges that "[t]he only person who could be construed as an employee was [Conner]." According to Clay's investigation, Conner was not a licensed bounty hunter.

592 (2012). "Absent a clear indication from the Legislature that it intended statutory language to have a special limiting definition, we must presume that the language used carries its ordinary and well-understood meaning." State v. Lenihan, 219 N.J. 251, 262 (2014); see also Paff v. Galloway Twp., 229 N.J. 340, 353 (2017). "[L]egislative language must not, if reasonably avoidable, be found to be inoperative, superfluous or meaningless." State v. Regis, 208 N.J. 439, 449 (2011) (quoting Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 613 (1999)). Furthermore, only when statutory language is ambiguous, or "leads to more than one plausible interpretation," may the court "turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" DiProspero v. Penn, 183 N.J. 477, 492-93, (2005) (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

Black's Law Dictionary defines "employ" as: "1. To make use of. 2. To hire. 3. To use as an agent or substitute in transacting business. 4. To commission and entrust with the performance of certain acts or functions or with the management of one's affairs." (12th ed. 2024). Applying this ordinary meaning, we agree with the reasoning undergirding the final agency decision. Notably, the testimony supports the conclusion that Said paid Rivera $300 in connection with the capture of Edwards, and that Rivera conducted surveillance

with Said, planned the apprehension with Said, and generally worked with him the day of the capture as well, including driving Edwards to Said's office. NJSP also accepted the credibility findings of the ALJ, who was presented with Detective Clay's interviews and investigation report summaries. We give deference to the ALJ and agency's credibility findings, and note that although Rivera testified differently, the ALJ did not find him to be as credible as Detective Clay. Evidence from the investigation report also supports the finding that the fee was paid in exchange for capturing Edwards, not merely bringing the case to Said initially.

Furthermore, accepting that Said thus "employed" Rivera, Rivera's conduct in Edwards' apprehension constitutes bounty hunter activities within the meaning of the BHLA. Specifically, N.J.S.A. 45:19-29(a) provides:

> "Bounty hunter" means and includes any bail runner, bail recovery agent, bail enforcement agent, fugitive recovery agent or any other person who, for fee, hire or reward: makes any investigation or investigations as to the location or whereabouts of any person who has violated the provisions of N.J.S.[]2C:29-7 or has failed to appear in any court of law in this State or any other state, when so required by law, or has failed to answer any charge, subpoena or court ordered inquiry, when so required by law; engages in or assists in the apprehension, arrest, detention, confinement, surrender or securing of any such person; or keeps any such person under surveillance.

21

[(Emphasis added).]

It is undisputed, moreover, that Rivera did not hold a bounty hunter's license. Thus, applying the same facts that credibly established that Rivera had been employed by Said, the Superintendent and ALJ properly found that Said's employing Rivera for bounty hunter work was in violation of the administrative code. On this ground, in light of the clear terms in the law and accepting the ALJ's and agency's credibility findings, we conclude the Superintendent properly denied Said's bounty hunter license renewal application.

IV.

Said also challenges the Superintendent's finding that Said demonstrated bad moral character under N.J.A.C. 13:55-2.7(a)(7) by unlawfully engaging Rivera to perform unlicensed bounty hunter services. Said argues that this conclusion is not supported by substantial evidence and neither the ALJ nor agency took into account his twenty-five-year career as a bounty hunter and bail bondsman. He also argues that he did not hurt anyone in this matter.

N.J.S.C. 13:55B-2.7(a)(7) provides a basis for denial of renewal when the applicant has "demonstrated bad moral character, incompetence, or untrustworthiness." The NJSP's administrative regulations do not provide a specific statutory definition for "bad moral character, incompetence, or

untrustworthiness."  NJSP urges us to follow the reasoning of <u>In re Berardi</u>, 23 N.J. 485, 493 (1957), which involved analogous statutory provisions of the Private Detective Act of 1939, N.J.S.A. 45:19-8 to -27.  In <u>Berardi</u>, our Supreme Court instructed that the Superintendent may properly exercise their judgment through "the testing of the known facts against the ordinary and generally accepted meaning of the words 'good character, competency, and integrity.'"  23 N.J. at 493.

Because we affirm the agency's finding that Said violated the BHLA by employing unlicensed individuals to engage in bounty hunter activities—an independently sufficient basis upon which to deny renewal of Said's license—we need not address whether it was unreasonable, arbitrary, or capricious for the Superintendent to also find the same violation of the statute is alone sufficient to find that Said demonstrated "bad moral character, incompetence, or untrustworthiness."  The fact remains that violation of the BHLA provides the basis for the denial of the renewal under N.J.A.C. 13:55B-2.7(a)(4) and we see no need to use the same facts to establish bad moral character under N.J.A.C. 13:55B-2.7(a)(7).

A-1620-23

To the extent we have not specifically addressed them, any remaining arguments raised by Said lack sufficient merit to warrant discussion.  See R. 2:11–3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1620-23